## BARNES DRILL CO. v. UNITED STATES.
## No. 48625.

United States Court of Claims.

July 11, 1949.

David A. Fegan, Washington, D. C., for plaintiff. Morris, KixMiller & Baar, Washington, D. C., were on the brief.

Carl Eardley, Washington, D. C., with whom was H. G. Morison, Assistant Attorney General, for defendant.

Before JONES, Chief Judge, and WHITAKER, HOWELL, MADDEN and LITTLETON, Judges.

WHITAKER, Judge.

Plaintiff entered into 13 contracts with the Procurement Division, Treasury Department, to furnish to the Soviet Government under the Lend-Lease Act, 22 U.S. C.A. § 411 et seq., some 85 honing and drilling machines. Twelve of these contracts were fully performed. One of them was terminated. Defendant paid in full for three of the machines purchased under these contracts, but it deducted from the amount due for the other 81 a discount of 5 percent, amounting to $14,193.53. Plaintiff sues to recover this amount.

Defendant's right to deduct this discount depends upon the following facts:

The Soviet Purchasing Commission negotiated with plaintiff for the purchase of 95 honing and drilling machines at a total purchase price of approximately $700,000. Because of the size of the prospective order plaintiff told the Soviet Purchasing Commission that it would be willing to allow an extra 5 percent discount on the purchase price. It confirmed this in a letter to the Commission dated July 12, 1944, in which it said:

"* * * It must be understood that this 5% extra discount applies only in this instance and only because of the quantity of machines specified which includes * * *.

"We must further positively state that this 5% extra allowance for quantity shall not apply on any future orders involving lesser quantities of machines and shall not apply to separate orders placed for individual machines."

Following receipt of this letter, the Soviet Purchasing Commission on July 25, 1944, wrote plaintiff, speaking of the extra discount as an "export differential" and claiming that it applied on all future orders irrespective of the size of the order. However, plaintiff, in reply, wrote the Soviet Purchasing Commission on August 1, 1944, stating, "The five percent export differential you understand applies to a quantity order or a quantity of machines, and it is only on a basis of obtaining a quantity of machines that we can effect the export differential."

After the Soviet Purchasing Commission had negotiated for the purchase of material, it was necessary for the seller to submit its bid to the Procurement Division of the Treasury Department of the United States, which agency then entered into a contract with the seller if its bid was acceptable.

Following negotiations between plaintiff and the Soviet Purchasing Commission, the Treasury Department entered into 13 contracts with plaintiff for 85 of the 95 honing and drilling machines which the Soviet Purchasing Commission desired to purchase. The additional 10 machines, about which plaintiff and the Soviet Purchasing Commission had had negotiations, were not contracted for at this time. The cost of these machines was about the same as the 85 machines for which orders were placed. Since orders were placed for only about one-half of the total dollar value of all the machines, the contracts for those for which orders were placed did not contain a provision for the extra 5 percent discount.

Contracts for the 85 machines were entered into on various dates from October 19, 1944, to February 8, 1945. In April 1945 plaintiff and the Soviet Purchasing Commission resumed negotiations for the purchase of the 10 additional machines and plaintiff submitted a bid therefor to the Procurement Division of the Treasury Department, but this bid did not call for the 5 percent quantity discount. Upon receipt of this bid the Procurement Division inquired of plaintiff if the 5 percent discount would be allowed if the 10 additional honing machines were ordered. Plaintiff replied that if the 10 additional machines were contracted for, the discount would be allowed both on these machines and on the 85 machines already ordered. Plaintiff confirmed this by letter dated April 19, 1945, to the Treasury Department, in which it said: " * * * In the event you place contracts with us covering R—43433, R—43420 and R—43421 we will agree to have you amend the outstanding contracts to cover the additional 5% quantity discount. * * *"

Plaintiff then submitted a written proposal to the Treasury Department for the sale of these 10 additional machines, with the provision therein that the contracts must be terminated, if at all, "in accordance with the terms and provisions of the approved termination provision for use in fixed price orders or subcontracts for the manufacture of supplies under government war contracts, recommended for such use under Contract Settlement Act of 1944, Public Law 395, approved July 1, 1944 [41 U.S.C.A. § 101 et seq.], by reference expressly made a part hereof."

On April 28, 1945, defendant accepted plaintiff's proposal, except that it substituted for plaintiff's cancellation provision one providing that if the contract was cancelled by the defendant, the total sum to be paid plaintiff for both completed and uncompleted work would not exceed the total contract price reduced by the amount already paid thereon and by the contract price of work not terminated. Plaintiff was authorized to proceed to manufacture these machines on these terms prior to the execution of a formal contract.

Following this plaintiff, on May 7, 1945, executed amendments of the original 13 contracts so as to provide for the 5 percent discount agreed upon, conditioned upon the purchase of the 10 additional machines. These amendments contained the following provision: "This amendment is made for the reason: As a result of negotiation with the Contractor on a total quantity of ninety-five (95) machines purchased on this and thirteen (13) other contracts (contract numbers listed on attached continuation sheet), he has allowed the above additional 5% quantity discount."

The formal contract covering the 10 additional machines was not sent plaintiff until May 21, 1945. It was signed by

plaintiff on May 24, and returned to the Treasury Department for execution by that department. However, before that department executed it, it was cancelled by a telegram sent plaintiff on May 25, 1945.

About four months after it had been terminated, the Treasury Department, on October 5, 1945, formally executed the contract and forwarded it to plaintiff. Plaintiff, however, returned it because it had already been cancelled before execution.

Under these facts we are of opinion that the defendant is not entitled to the discount which it deducted on the 81 machines which were delivered under the 13 original contracts. These contracts were amended only in consideration of the purchase of 10 additional machines, the purchase price of which amounted to approximately the same amount as the 85 machines already purchased. Before the defendant executed this contract for them it cancelled the order for these machines, which it had previously informally placed with plaintiff.

Its execution of the contract four months later was an evident attempt to hold plaintiff to the letter of its offer to give the discount, although plaintiff had already been deprived of the benefit it expected to receive in consideration of the offer. This late execution of the contract avails defendant nothing.

Plaintiff benefited not at all from the placing with it of the informal order on April 28, 1945. Its agreement to give the 5 percent discount was made in consideration of securing this large additional order. Before the defendant ever entered into a formal contract for the 10 additional machines, it cancelled the informal order for them previously given. The consideration for the discount, therefore, failed.

Defendant says that plaintiff's agreement to give the extra 5 percent discount was conditioned alone on the award of the contract, and it says that the contract was awarded and, therefore, the condition was met. As a matter of fact, the contract was not awarded, but even if it had been, its immediate cancellation certainly does not fulfill the condition in the minds of the parties when the discount was agreed upon.

This is apparent from the statement of the reason for the amendment of the original 13 contracts. This reason is stated as follows: "As a result of negotiation with the Contractor on a total quantity of ninety-five (95) machines *purchased* on this and thirteen (13) other contracts * * *, he has allowed the above additional 5% quantity discount." [Italics ours.] The inducement for the allowance of the discount was the purchase of the machines. This contemplated payment of the purchase price. The condition is not met by an order given and cancelled before there is any opportunity to earn the purchase price.

It is true that all the contracts contained a termination clause, and the Government in terminating the contract did no more than it was authorized to do. However, it is quite clear that plaintiff did not intend to allow the discount unless it was given a reasonable opportunity to earn the purchase price under the additional order. Since no opportunity at all was given it to earn the purchase price, the consideration for the allowance of the extra discount has failed, and defendant in equity and good conscience is not entitled to retain it.

We do not mean to say that if the contract had been cancelled after having been substantially performed that this would have deprived defendant of its right to the discount. This was a risk perhaps in the minds of the parties; but we cannot believe that it was intended that the discount should be allowed when there was no opportunity at all for plaintiff to realize the benefit for which the discount was given. Plaintiff is entitled to recover the discount deducted amounting to $14,193.53, and defendant is not entitled to recover the amount of its counterclaim of $3,304.84, representing the amount of the discount on 3 machines for which plaintiff was paid in full.

Judgment will be entered in plaintiff's favor for $14,193.53, and defendant's counterclaim will be dismissed. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, Judges, concur.